UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


UNITED STATES OF AMERICA    )
    )
    v.    )    1:16-cr-00079-JAW
    )
RAHEEM CHILDERS    )

## SENTENCING ORDER

Raheem Childers has two prior convictions for offenses that the Government

contends qualify him as a career offender. Mr. Childers no longer contests that his

prior Massachusetts drug-trafficking conviction serves as a predicate offense[1];

---

[1] In the initial Presentence Investigation Report (PSR) released on October 14, 2016, the Probation Office (PO) concluded that Mr. Childers was a career offender based on a prior New York conviction for attempted robbery in the second degree and a prior Massachusetts conviction for trafficking in controlled substances. *See Gov't's Mem. in Aid of Sentencing* at 1 (ECF No. 39) (*Gov't's Mem.*). Mr. Childers objected to both convictions serving as predicate offenses in a letter dated November 7, 2016. *Id.*; *see also Revised Addendum to Second Revised Presentence Investigation Report*.

As to the Massachusetts drug-trafficking conviction, Mr. Childers argued that the conviction should not count based on *Cuevas v. United States*, 778 F.3d 267 (1st Cir. 2015). *Gov't's Mem.* at 1–2. In *Cuevas*, the First Circuit held that a defendant whose state convictions were vacated and dismissed had a cognizable claim under 28 U.S.C. § 2255 in light of the fact that a chemist working on the defendant's case had falsified certificates of drug analysis and contaminated samples. 778 F.3d at 268–69. Mr. Childers argued that because his prior drug-trafficking conviction was obtained in the jurisdiction where the former state chemist who falsified drug test results worked, it should not be counted. *Gov't's Mem.* at 1–2.

According to the Government, Mr. Childers' counsel "acknowledged that [he] did not know whether the disgraced chemist worked on his client's case but indicated that he was looking into the matter." *Gov't's Mem.* at 2 n.1. The Government further notes that "[t]o date, no records have been produced by the defendant indicating that the chemist worked on his case and, if so, falsified the drug test results on the drugs involved in that case." *Id.* Based on this lack of evidence, and the fact that Mr. Childers has not moved to vacate or set aside the Massachusetts drug-trafficking conviction, the Government urges the Court not to entertain Mr. Childers' attack on the conviction. *Id.* at 7 n.9.

Mr. Childers did not respond to this part of the Government's argument and focused solely on the New York robbery conviction in his memorandum. *See Def.'s Opp'n* at 1–6. The Court could assume that Mr. Childers concedes that his prior Massachusetts drug-trafficking conviction is a "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b) and serves as a predicate offense for career offender purposes. Even though Mr. Childers has not affirmatively conceded the point, he would have waived it by failing to present any argument. *See United States v. Arroyo–Blas*, 783 F.3d 361, 366–67 (1st Cir. 2015).

Nevertheless, one lesson from *United States v. Mulkern*, 854 F.3d 87 (1st Cir. 2017), which the First Circuit issued after the parties' briefing in this case, is that the Court should look carefully at the dividing line between possession and trafficking in determining distributive intent. *Id.* at 96. In

however, he disagrees with the Government as to his prior New York robbery conviction. The Court concludes that the New York robbery conviction is a "crime of violence" pursuant to U.S.S.G. § 4B1.2(a)(2) because robbery is an enumerated offense and the New York robbery statute substantially corresponds to the generic form of robbery.

## I.    BACKGROUND

On June 8, 2016, a federal grand jury indicted Raheem Childers charging him with a single count of knowingly and intentionally possessing with intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule I controlled substance, and aiding and abetting that conduct, in violation of

---

*Mulkern*, the defendant was convicted of trafficking a scheduled drug under a Maine statute that defined "traffick" as possession of two grams or more or heroin. *Id.* at 94 (citing 17-A M.R.S. § 1101(17)). The *Mulkern* Court concluded that the defendant's possession of only two grams did "not come close" to allowing an inference that Mr. Mulkern was trafficking large quantities of drugs as required by the Armed Career Criminal Act (ACCA). *Id.* at 97.

Mr. Childers' PSR reveals that on January 7, 2008, he pleaded guilty to two crimes: (1) trafficking in cocaine and (2) possession with the intent to distribute a class B substance. *Second Revised Presentence Investigation Report* ¶ 29. Regarding the first offense, the docket sheets for the cocaine trafficking conviction reveal that Mr. Childers pleaded guilty to a lesser included offense, namely a violation of Massachusetts General Laws, chapter 94C, section 32E(b)(1). It appears that in 2006, when Mr. Childers was convicted, section 32E(b)(1) encompassed possession of between 14 and 28 grams of cocaine. The docket sheets on the second crime, possession with the intent to distribute, are not entirely clear. Nevertheless, it appears that the drug quantity for this crime may have tracked the 14 to 28 grams of cocaine in the first one.

Assuming this is correct, it is an open question whether, following *Mulkern*, the possession of a drug quantity as low as 14 grams would allow an inference of trafficking and thereby constitute a "serious drug offense" under the ACCA. The *Mulkern* Court cites with approval an Eleventh Circuit case, *United States v. James*, 430 F.3d 1150, 1152–56 (11th Cir. 2005), which considered the possession of between 200 and 400 grams of cocaine as possession giving rise to distributive intent. *Mulkern*, 854 F.3d at 97. Fourteen grams is a far cry from two hundred grams, and much closer to two grams, which the *Mulkern* Court concluded was insufficient for ACCA purposes. This brief overview leaves unanswered other questions, such as whether and the extent to which the *Mulkern* ACCA analysis applies to the career offender provisions of the Guidelines. Nevertheless, the Court concludes that it would benefit from memoranda from counsel on this question before finally determining whether Mr. Childers is a career offender under the Guidelines.

21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Indictment* (ECF No. 14). On August 16, 2016, Mr. Childers entered a guilty plea. *Min. Entry* (ECF No. 30).

The Court held a presentence conference on December 13, 2016 and the parties agreed to file sentencing memoranda addressing whether Mr. Childers is a career offender within the meaning of U.S.S.G. § 4B1.1. *Min. Entry* (ECF No. 36). The Government filed its sentencing memorandum on January 30, 2017. *Gov't Mem. in Aid of Sentencing* (ECF No. 39) (*Gov't Mem.*). Mr. Childers filed his response on March 16, 2017. *Def.'s Mem. in Aid of Sentencing* (ECF No. 43) (*Def.'s Opp'n*). The Government replied on March 24, 2017, raising the impact of the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), which was issued after the Government's initial memorandum. *Gov't Reply Mem. In Aid of Sentencing* (ECF No. 44) (*Gov't Reply*). As the Government's reply raised a new issue, the Court ordered Mr. Childers to respond. *Order* (ECF No. 45). On June 8, 2017, Mr. Childers filed a supplemental sentencing memorandum addressing the new issue. *Def.'s Suppl. Mem. in Aid of Sentencing* (ECF No. 46) (*Def.'s Sur-Reply*).

## II. THE PRESENTENCE INVESTIGATION REPORT

In Part B of the Second Revised Presentence Investigation Report (PSR), not counting separate counts, the Probation Office (PO) listed twelve arrests that resulted in convictions for Mr. Childers, beginning June 11, 2002, when Mr. Childers was arrested and later convicted of attempted robbery in the second degree, through March 3, 2014, when he turned himself in for and was later convicted of credit card theft and fraud. *Second Revised Presentence Investigation Report* ¶¶ 23–34 (*PSR*).

The PO calculated Mr. Childers' total criminal history score at 20, which resulted in a criminal history category of VI. *Id.* ¶ 35. Mr. Childers' total offense level is 23. *Id.* ¶ 21.

In the initial PSR, the PO concluded that Mr. Childers was a career offender as a consequence of his prior New York conviction for attempted robbery in the second degree (New York robbery conviction) and his prior Massachusetts conviction for trafficking in controlled substances. *See Gov't's Mem.* at 1. Mr. Childers objected. *Id.* Based on Mr. Childers' objection regarding the New York robbery conviction and a recent ruling by Chief Judge Torresen of this District in *United States v. Steed*, No. 2:16-cr-48-NT, the PO ultimately concluded that the New York robbery was not a crime of violence and modified the PSR to remove the career offender enhancements. *Revised Addendum to PSR* at 1.

## III. THE SIGNIFICANCE OF THE ISSUES

Generally, the consequences of application of the career offender guideline are two-fold. First, a career offender's criminal history category is automatically adjusted to Category VI. U.S.S.G. § 4B1.1(b). Additionally, a defendant's offense level is adjusted based on the offense statutory maximum. *Id.* These adjustments, in turn, affect a defendant's imprisonment range.

Mr. Childers' criminal history category is Category VI regardless of the career offender enhancement. *PSR* ¶ 35. Where application of the career offender guidelines would affect Mr. Childers is in his total offense level. Because the statutory maximum for a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 is twenty

years, *see* 21 U.S.C. § 841(b)(1)(C), Mr. Childers' total offense level would increase from 23 to 29 after taking into account the adjustment for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(3). As a result, Mr. Childers' guideline imprisonment range would increase from 92 to 115 months to 151 to 188 months.

## IV.   THE PARTIES' POSITIONS

### A.   The Government's Memorandum

As an initial matter, the Government clarifies that although the PSR states that Mr. Childers had one prior conviction for robbery in the second degree in Queens County Superior Court, the records obtained from that court show two convictions of attempted robbery in the second degree. *Gov't's Mem.* at 2–3. The Government then argues that robbery in the second degree in violation of New York State Penal Law § 160.10(1) is a "crime of violence" within the meaning of U.S.S.G. § 4B1.2 and *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*). *Id.* at 4.

The Government states that under *Johnson I*, the phrase "physical force" in the context of the Armed Career Criminal Act's (ACCA) definition of "violent felony" means "violent force—that is, force capable of causing physical pain or injury to another person." *Id.* (citing *Johnson I*, 559 U.S. at 140). The Government explains that because the First Circuit has held that the terms "crime of violence" under the career offender guideline and "violent felony" under the ACCA are identical in meaning, and that decisions construing one term inform the construction of the other, the Court should consider whether the New York second degree robbery statute

requires "violent force" as defined by *Johnson I*.  *Id.* at 5.  The Government concludes that it does.  *Id.* at 6.

First, the Government points out that under the New York State Penal Law, a person is guilty of robbery when he "forcibly steals property," which is further defined by the statute as one who "uses or threatens the immediate use of physical force upon another person."  *Id.* at 5 (citing N.Y. PENAL LAW §§ 160.00, 160.10(1)).  The Government claims that this statute tracks the career offender guideline and argues that by its plain language, robbery under New York law "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* (citing U.S.S.G. § 4B1.2).

Second, the Government argues that New York's requirement of the use or threatened use of physical power against another person "is precisely what the Supreme Court suggested Congress had in mind in using the term 'physical force' in the ACCA."  *Id.* at 5–6.  The Government urges the Court to reject any suggestion that robbery under New York law criminalizes non-violent behavior because, in its view, the New York cases concerning convictions under the statute all involve the use or threatened use of physical power, which it deems as violence.  *Id.* at 6 n.8.

### B.    Raheem Childers' Opposition

Mr. Childers first claims that the PO's reliance on the 2016 Guidelines Manual results in an ex post facto violation.  *Def.'s Opp'n* at 1 n.1.  Mr. Childers then states that the Government bears the burden of showing the offense is a crime of violence under the force clause, and agrees that the definition of physical force as laid out in

*Johnson I* applies. *Id.* at 2. Mr. Childers adds that the inquiry into whether an offense is a "crime of violence" begins with the categorical approach, which looks to the statutory definitions of the prior convictions and not the defendant's actual conduct. *Id.* He further observes that if the statute is divisible, meaning there are elements set out in the alternative, the modified categorical approach is applied, which permits the Court to look at limited additional documentation to ascertain which alternative within the statute was charged. *Id.* at 3.

Because he concludes that New York State Penal Law § 160.10 includes several alternatives, Mr. Childers uses the modified categorical approach and looks to the indictment for the specific alternative charged. *Id.* He claims that, based on the indictment, he pleaded guilty to the following portion of the statute:

> A person is guilty of robbery in the second degree when he forcibly steals property and when:
>> 2. In the course of the commission of the crime or immediate flight therefrom, he or another participant in the crime:
>>> (a) Causes physical injury to any person who is not a participant in the crime.

*Id.*[2]

Mr. Childers then claims that "[i]n addressing what level of physical force is necessary to convict someone of 'forcibly stealing property,' New York courts have

---

[2]    Mr. Childers quotes from New York State Penal Law § 160.10(2). However, as pointed out by the Government, the judgments and information from the relevant docket numbers show that Mr. Childers pleaded guilty to attempted robbery in the second degree in violation of New York State Penal Law § 160.10(1). *See Gov't's Reply* at 1 n.1; *Gov't's Ex. 1 Certificate of Disposition for Docket Number 01919-2002* ("ATTEMPTED ROBBERY 2ND DEGREE PL 110-160.10 01 DF"); *Gov't's Ex. 2 Certificate of Disposition for Docket Number 25050-2002* (same); *Gov't's Ex. 3 Information No. 2050/2002* ("ATTEMPTED ROBBERY IN THE SECOND DEGREE (1) 110/160.10(1)"). Mr. Childers' mistake does not substantially affect his argument because the underlying offense is robbery, which is defined in both subsections by New York State Penal Law § 160.00.

held that very little force is necessary." *Id.* at 3–4 (collecting cases). He cites *United States v. Moncrieffe*, 167 F. Supp. 3d 383 (E.D.N.Y. 2016), a case in which the Eastern District of New York addressed a similar issue in the deportation context and concluded that robbery in New York is not a crime of violence based on the force clause because "the physical force required under the New York robbery statute can be minimal and does not need to amount to the necessary violent force under federal section 16(a)." *Id.* at 4 (quoting *Moncrieffe*, 167 F. Supp. 3d at 406). Mr. Childers contends that "[i]n order for a prior conviction to count as a 'crime of violence' under U.S.S.G. § 4B1.2(a), all of the conduct that could possibly come under the statute needs to qualify as a 'crime of violence'" and argues that this is simply not the case under New York's second degree robbery statute. *Id.* at 5. Therefore, Mr. Childers concludes that his prior New York robbery conviction cannot be used as a predicate offense under the career offender guidelines. *Id.* at 5–6.

## C.    The Government's Reply

In reply, the Government maintains that Mr. Childers' prior convictions for attempted robbery in the second degree qualify as career offender predicates under the force clause of U.S.S.G. § 4B1.2(a)(1). *Gov't's Reply* at 1.

In addition, the Government raises the impact of *Beckles v. United States*, 137 S. Ct. 886 (2017), a recent case in which the United States Supreme Court held that its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*) that the residual clause of the ACCA is void for vagueness does not apply to the identically-worded residual clause in the career offender guidelines. *Id.* at 1–2. The Government

explains that it did not press the applicability of the residual clause or the language in Application Note 1 enumerating robbery as a crime of violence because of the *Johnson II* decision, as well as the First Circuit's decision in *United States v. Soto–Rivera*, 811 F.3d 53 (1st Cir. 2016). *Id.* at 2. However, it claims that the Court is not bound by its concession which was made before *Beckles*. *Id.* at 3 (citing *United States v. Thompson*, 851 F.3d 129 (1st Cir. 2017)).

The Government states that under Application Note 1 to U.S.S.G. § 4B1.2 (2015), robbery is enumerated as a "crime of violence" and an attempt to commit such an offense is also counted. *Id.* It further states that the relevant inquiry is "whether a defendant was necessarily convicted of the 'generic' form of a particular offense contemplated by U.S.S.G. § 4B1.2(a)." *Id.* at 4. The Government then argues that the definition of robbery as set forth in New York State Penal Law § 160.00 "corresponds in all material respects to the generic definition of robbery" and thus a defendant convicted for robbery in New York is necessarily convicted of the generic form of robbery. *Id.* at 4–5.

### D. Raheem Childers' Sur-Reply

In his sur-reply, Mr. Childers contends that even enumerated offenses such as robbery must still be proven by the Government. *Def.'s Sur-Reply* at 1. He argues that for the reasons set forth in his initial memorandum, the Government cannot meet its burden in this regard. *Id.*

## V. DISCUSSION

First, the Court considers Mr. Childers' ex post facto concerns in order to determine which version of the Guidelines Manual applies and whether it matters. Then, the Court analyzes whether Mr. Childers' prior New York robbery conviction is a "crime of violence" pursuant to U.S.S.G. § 4B1.2(a).

## A. Ex Post Facto Considerations

Pursuant to U.S.S.G. § 1B1.11(a), "[t]he Court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." However, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.* § 1B1.11(b)(1).

Mr. Childers claims that the PO's use of the 2016 Guidelines Manual violates the ex post facto clause and he asks the Court to rely on the 2015 Guidelines Manual, which was the Manual in effect on the date the instant offense was committed.[3] *Def.'s Opp'n* at 1 n.1. The Government also relies on the 2015 Guidelines Manual in its arguments. *See Gov't's Reply* at 3. Neither party explains specifically why the use of the 2016 Guidelines Manual violates the ex post facto clause, but the Court assumes it is because the United States Sentencing Commission revised the definition of "crime of violence" in 2016, eliminating the residual clause and adding robbery as an enumerated offense in the text of the Guideline.

---

[3]      Mr. Childers committed the instant offense on about May 26, 2016. *See Indictment* at 1. The Manuals are published in November. Therefore, the 2016 Guidelines Manual was not published until November 2016, after Mr. Childers committed the offense.

The current version of § 4B1.2(a) reads:

(a)   The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

   (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

   (2)  *is* murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (2016) (emphasis supplied).

According to the 2015 Guidelines Manual:

(a)   The term "crime of violence" is defined to mean any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

   (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

   (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (2015) (emphasis added).  The first clause is referred to as "the force clause" and the italicized portion of the second clause in the 2015 version of the Guidelines is referred to as "the residual clause."  Application Note 1 to U.S.S.G. § 4B1.2 further states that "'crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."

As the Government pointed out, in 2015 the United States Supreme Court held that the residual clause of the ACCA was void for vagueness. *See Johnson II*, 135 S. Ct. at 2563. After the *Johnson II* decision, courts disagreed over whether the *Johnson II* holding applied to the identical language found in the residual clause in the Guidelines Manual. *See Beckles*, 137 S. Ct. at 891–92 n.2; *see also Amendments to the Sentencing Guidelines* (Jan. 21, 2016) at 3 ("While not addressing the guidelines, [the *Johnson II*] decision has given rise to significant litigation regarding the guideline definition of 'crime of violence'"). Although the First Circuit did not have the opportunity to definitively decide the issue because the Government conceded the residual clause in the Guidelines was vague under *Johnson II*, it did hold that without the residual clause it was compelled to ignore Application Note 1 to U.S.S.G. § 4B1.2. *See Soto–Rivera*, 811 F.3d at 62.

As a result of the differing opinions as to the validity of the residual clause in the Guidelines, the United States Sentencing Commission revised the definition of "crime of violence" found at U.S.S.G. § 4B1.2 in the 2016 Guidelines Manual. The "force clause" remains the same, but the second clause eliminates the residual clause and simply enumerates specific offenses that qualify as "crimes of violence" (the enumerated offenses clause).

Based on this framework, which was the legal framework in place when the parties prepared their original memoranda, application of the 2016 Guidelines Manual would have violated the ex post facto clause. Under the 2016 definition of "crime of violence," robbery is an enumerated offense in the text of the Guidelines,

whereas under the 2015 Guidelines Manual, robbery is listed only in Application Note 1, which the First Circuit deemed was inconsistent with the Guideline itself in light of the Government's concession that *Johnson II* invalidated the residual clause. *United States v. Fields*, 822 F.3d 20, 33 (1st Cir. 2016) ("The parties agree that, in light of [*Johnson II*], the residual clause of the career offender guideline is unconstitutional and thus may not be relied upon to classify a conviction of a crime of violence under the career offender guideline. We assume without deciding that the parties are correct . . . .").

However, as noted by the Government in its reply memorandum, the United States Supreme Court recently held that the residual clause in the Guidelines is not subject to vagueness challenges under the Due Process Clause. *See Beckles*, 137 S. Ct. at 890. Thus, as the law now stands, the Court can apply the residual clause, and as a consequence, Application Note 1, when determining whether a conviction is a predicate offense for purposes of career offender status. Because Application Note 1 to U.S.S.G. § 4B1.2 in the 2015 Guidelines Manual enumerates robbery as a "crime of violence," the legal analysis becomes the same whether the Court analyzes the robbery conviction under the 2015 or 2016 version of the Guidelines Manual. *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (analyzing whether the statutory definition of a prior conviction substantially corresponds to the generic version of the enumerated offense). At least, the difference between the 2016 Guideline, where robbery is expressly enumerated in the body of § 4B1.2(a)(2), and the 2015 Guideline, where robbery was listed in the application note, does not justify a different result.

As a result, Mr. Childers' ex post facto concerns have been eclipsed by *Beckles* and

are no longer valid.[4]  The Court applies the 2016 Guidelines Manual, the version of

the Manual that will be in effect at the time of Mr. Childers' sentencing.

### B.      Career Offender Guidelines

Under the Guidelines:

> A defendant is a career offender if (1) the defendant was at least
> eighteen years old at the time the defendant committed the instant
> offense of conviction; (2) the instant offense of conviction is a felony that
> is either a crime of violence or a controlled substance offense; and (3) the
> defendant has at least two prior felony convictions of either a crime of
> violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2016).  As quoted earlier, the Guidelines further provide:

> (a) The term "crime of violence" means any offense under federal or state
> law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of
> physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault,
> a forcible sex offense, robbery, arson, extortion, or the use or unlawful
> possession of a firearm described in 26 U.S.C. § 5845(a) or explosive
> material as defined in 18 U.S.C. § 841(c).

*Id.* § 4B1.2(a).  The Government contends that the prior New York robbery conviction

is a "crime of violence" and therefore qualifies as a predicate offense.  Mr. Childers

disagrees.

---

[4]      Although the Government originally conceded any argument that the New York robbery conviction would qualify as a predicate offense based on the residual clause and Application Note 1, the Court is not bound by this concession.  *See United States v. Thompson*, 851 F.3d 129, 131 (1st Cir. 2017) ("We are not bound by the government's concession, which, while understandable before *Beckles*, turned out to be incorrect").

The relevant inquiry under the career offender guidelines is whether the state's legal definition of the offense of conviction fulfills either clause of the Guidelines' definition of a crime of violence. In making this determination, courts have developed two approaches: the categorical approach and the modified categorical approach. *See United States v. Mulkern*, 854 F.3d 87, 90 (1st Cir. 2017).[5] Under the categorical approach, the court assumes the state statute of conviction "rested upon [nothing] more than th[e] least of the acts criminalized." *Id.* (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)) (internal quotations omitted). The court then compares the state statute of conviction's elements to the pertinent definitions under the federal law. *Id.* If there is a match, the state conviction is a predicate offense. *Id.*

However, when the state statute is divisible, in other words lays out elements in the alternative and thereby defines multiple crimes, courts employ the modified categorical approach. *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). Under that method, "the court looks beyond the statute of conviction to a narrow 'class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)'—known as *Shepard* documents—'to determine what crime, with what elements, the defendant was convicted of.'" *Id.* (citing *Shephard v. United States*, 544 U.S. 13, 26 (2005)). The court can then compare that crime, as the

---

[5]     Although *Mulkern* is an ACCA case, the First Circuit has held that "the terms 'crime of violence' under the career offender guideline and 'violent felony' under the ACCA are nearly identical in meaning, so that decisions construing one inform the construction of the other." *United States v. Willings*, 588 F.3d 56, 58 n.2 (1st Cir. 2009).

categorical approach commands, with the pertinent definition under federal law, to see if the state conviction is eligible. *Id.*

With these principles in mind, the Court turns to whether the New York robbery conviction qualifies as a "crime of violence" under the Guidelines.

### 1. The New York Robbery Conviction

Mr. Childers has two prior convictions of attempted robbery in the second degree, which is found under New York State Penal Law § 160.10. *See PSR ¶¶* 23, 23A. The statute provides:

> A person is guilty of robbery in the second degree when he forcibly steals property and when:
> 1. He is aided by another person actually present; or
> 2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
> > (a) Causes physical injury to any person who is not a participant in the crime; or
> > (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
> 3. The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

N.Y. PENAL LAW § 160.10. Because the statute includes several alternatives, the Court uses the modified categorical approach and looks to the *Shephard* documents to determine what crime, with what elements, the defendant was convicted of. *See Mulkern*, 854 F.3d at 91. Based on the judgments and information for these convictions, the Court finds that Mr. Childers pleaded guilty to subsection 1 of the statute, which states: "A person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present." *See Gov't's Exs. 1–3.*

The New York statute defines "forcible stealing":

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. PENAL LAW § 160.00.

The Court now compares New York's legal definition of robbery or "forcible stealing" to the relevant definitions under the career offender guidelines to determine whether the robbery conviction is a predicate offense based on either the force clause or the enumerated offenses clause.

### 2. The Force Clause

One type of "crime of a violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The phrase "physical force" means violent force— that is, "force capable of causing physical pain or injury to another person." *United States v. Collins*, 811 F.3d 63, 66–67 (1st Cir. 2016) (citing *Johnson I*, 559 U.S. at 140). Here, then, the Court must determine whether a person who "forcibly steals property" under New York State Penal Law § 160.10 necessarily uses force "capable of causing physical pain or injury to another." *See id.*

Two judges in this District have addressed this exact issue but have reached different conclusions. In *United States v. Weston*, No. 2:15-cr-102-GZS, Judge Singal

applied the career offender enhancement based on a prior New York conviction for attempted robbery in the second degree. However, in *United States v. Steed*, No. 2:16-cr-48-NT, Chief Judge Torresen declined to apply the enhancement based on a prior conviction under the same New York law. Although neither Judge issued a written sentencing order on this subject, the transcript of the sentencing proceedings in *Steed* sheds light on Chief Judge Torresen's reasoning.[6] She determined that because the force required for a conviction under the New York law can be non-violent, the statute is categorically overbroad and the robbery conviction is not a predicate offense under the force clause. *Tr. of Proceedings* at 6–19, *United States v. Steed*, No. 2:16-cr-48-NT (ECF No. 59).

The Eastern District of New York has also recently addressed this issue in three cases and reached the same conclusion as Chief Judge Torresen in both. In *United States v. Moncrieffe*, 167 F. Supp. 3d 383 (E.D.N.Y. 2016), the court had to determine whether a prior conviction for robbery in the first degree under New York Penal Law § 160.15 was a "crime of violence" under the Immigration and Nationality Act triggering removal proceedings. *Id.* at 401. Applying the categorical approach, the *Moncrieffe* Court reasoned that "[t]he 'forcibly stealing' element of an offense under New York Penal Law section 160.15, which is defined in the State's section 160.00 and is common to all New York robbery offenses, includes *de minimis* levels of force which do not fall within the federal definition of a 'crime of violence' in section

---

[6]     There is no transcript of Judge Singal's sentencing hearing on the docket in the *Weston* case and the parties have not presented the Court with one. Therefore, the Court does not have the benefit of Judge Singal's reasoning.

16(a)." *Id.* at 401–04. Therefore, it determined that the robbery conviction was not a "crime of violence." *Id.* at 406.

A different judge in the Eastern District of New York reached the same conclusion in determining whether a prior conviction in New York for robbery in the third degree was a crime of violence under the force clause in the Guidelines. *See United States v. Johnson*, No. 15-CR-32 (BMC), 2016 WL 6684211, at *7 (E.D.N.Y. Nov. 12, 2016) (*Johnson III*). The Court distinguished several Second Circuit cases that held that the crime of robbery in New York, regardless of degree, constitutes a crime of violence because those cases were either decided prior to *Johnson I* or were non-precedential summary orders that did not undertake an analysis of robbery pursuant to the definition of force in *Johnson I*. *Johnson III*, 2016 WL 6684211, at *6. The court also distinguished a New York Court of Appeals case, *People v. Jurgins*, 46 N.E.3d 1048 (N.Y. 2015), reasoning that the case stands for the limited holding that "stealthy seizure or snatching" does not fall within the New York law and says nothing about whether other acts might fall within the law that do not constitute force as *Johnson I* requires. *Johnson III*, 2016 WL 6684211, at *6. With no other relevant Court of Appeals decisions in New York, the *Johnson III* Court turned to the decisions of the intermediate New York appellate courts and determined that, based on these decisions, "robbery in New York does not necessarily involve force 'capable of causing physical pain or injury to another' as is required under *Johnson I*." *Id.*

On February 13, 2017, a third judge in the Eastern District of New York concluded that "third degree robbery and attempted third degree robbery under New

York law do not necessarily involve the use of 'violent force.' As a result, those crimes cannot be predicate violent felonies under the ACCA's force clause." *Thrower v. United States*, No. 04-CR-0903 (ARR), 2017 U.S. Dist. LEXIS 45776, at *30 (E.D.N.Y. Feb. 13, 2017).

Finally, on May 11, 2017, a judge in the Western District of Virginia arrived at a similar result. *United States v. Batista*, No. 5:09CR00037, 2017 U.S. Dist. LEXIS 73068, at *19 (W.D. Va. May 11, 2017) ("'forcible steal[ing]' under New York Penal Code § 160.00 is not categorically a violent felony").

This Court agrees with the conclusion reached by Chief Judge Torresen, the judges of the Eastern District of New York, and the judge of the Western District of Virginia. The Court acknowledges, as the Government points out, that on its face, the language of the New York statute appears to have "as an element the use attempted use or threatened use of physical force against the person of another." *See* N.Y. PENAL LAW § 160.00 ("A person forcibly steals property and commits robbery when, in the course of committing a larceny, *he uses or threatens the immediate use of physical force upon another person* . . .") (emphasis supplied). However, according to the categorical approach, the Court must look to the least amount of force that could result in a conviction under this statute to determine whether it would necessarily result in a conviction based on the federal definition of physical force as defined in *Johnson I*. *See Collins*, 811 F.3d at 67.

The Court turns to New York's interpretations of the statute to make this determination. *See Johnson I*, 559 U.S. at 138 (stressing that, in deciding whether a

state conviction is a "violent felony" under the ACCA, federal courts are "bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of" the statute of conviction); *Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither [the Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State"); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise").

New York courts have explained that the "physical force" threatened or employed under the New York robbery statute can be minimal, including a bump, a brief tug-of-war over property, or even the minimal threatened force exerted in "blocking" someone from pursuit by simply standing in their way. *See, e.g., People v. Brown*, 663 N.Y.S.2d 539, 540 (N.Y. App. Div. 1st Dep't 1997) (attempting to push the victim); *People v. Bennett*, 631 N.Y.S.2d 834, 834 (N.Y. App. Div. 1st Dep't 1995) ("human wall" blocking pursuit); *People v. Lee*, 602 N.Y.S.2d 138, 139 (N.Y. App. Div. 1st Dep't 1993) (bumping victim); *People v. Patton*, 585 N.Y.S.2d 431, 431 (N.Y. App. Div. 1st Dep't 1992) (blocking pursuit); *People v. Safon*, 560 N.Y.S.2d 552, 552 (N.Y. App. Div. 4th Dep't 1990) (tug-of-war); *see also People v. Pena*, 406 N.E.2d 1347 (N.Y. 1980) (defendant who commits robbery while carrying a deadly weapon is guilty of robbery in the first degree; mere possession is sufficient for a conviction). As the

Eastern District of New York explained, this de minimus force would not result in a conviction under the federal definition of physical force, which requires violent force or force capable of causing physical pain or injury to another. *See Johnson I*, 559 U.S. at 138–39 (concluding that definitions for physical force "would not be satisfied by the merest touching"); *see also Mulkern*, 854 F.3d at 93–94 (concluding that because Maine's highest courts recognize that any physical force suffices to convict under the Maine robbery statute, the statute falls short of requiring the force necessary under *Johnson I*).

Because the New York robbery statute does not require a showing of force "capable of causing physical pain or injury," but something short of that will do, Mr. Childers' prior New York robbery conviction is not a "crime of violence" based on the force clause of the career offender guidelines.

### 3.        Enumerated Offenses Clause

Although not a crime of violence under the force clause, the robbery conviction does qualify as a crime of violence under subsection two of U.S.S.G. § 4B1.2(a), or the enumerated offenses clause.  The 2016 Guidelines Manual lists several offenses that constitute crimes of violence, including robbery.  U.S.S.G. § 4B1.2(a)(2).

However, the fact that robbery is listed does not end the required analysis. Where a specific offense is enumerated, the trial court must determine if the state statute substantially corresponds to the generic meaning of that enumerated offense. *Taylor*, 495 U.S. at 602; *see also Deschamps v. United States*, 133 S. Ct. 2276, 2281 (2013) ("[Courts] compare the elements of the statute forming the basis of the

defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood").  The prior conviction qualifies as a predicate only if the statute's elements are the same as, or narrower than, those of the generic offense. *Deschamps*, 133 S. Ct. at 2281; *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

The generic form of robbery is, essentially, the taking of property from another person or from the immediate presence of another person by force or by intimidation. *See United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010)); *see also* 67 Am. Jur. 2d *Robbery* § 12 ("[Robbery] is the taking, with intent to steal, personal property of another, from his or her person or in his or her presence, against his or her will, by violence, intimidation, or by threatening the imminent use of force"); Model Penal Code § 222.1(1) ("A person is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts him in fear of immediate serious bodily injury . . . ."); 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . . .").

No courts have directly addressed whether the New York robbery statute substantially corresponds to the generic form of robbery in the context of the enumerated offenses clause.  However, courts analyzing other states' robbery statutes that use language similar to the New York statute have determined that the state's

legal definition has the same elements as the generic definition of robbery. For example, in *United States v. Walker*, 595 F.3d 441 (2d Cir. 2010), the Second Circuit held that common-law strong arm robbery in South Carolina is a crime of violence because the offense, "defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another in his presence by violence or by putting such person in fear," corresponds in all material respects to the generic definition of robbery. *Id.* at 446.

The Ninth and Tenth Circuits reached similar conclusions in addressing California's robbery statute, which defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will, accomplished by means of force or fear," and defines fear as being accomplished through threat of injury either to a person or to property. *United States v. Becerril–Lopez*, 541 F.3d 881, 890–91 (9th Cir. 2008); *United States v. Castillo*, 811 F.3d 342, 345 (10th Cir. 2015). The Ninth and Tenth Circuits determined that the robbery conviction was a crime of violence because the elements satisfied the definition for generic robbery, in the case of a threat of injury to a person, or for generic extortion, in the case of threat of injury to property. *Becerril–Lopez*, 541 F.3d at 892; *Castillo*, 811 F.3d at 347.

The Eleventh Circuit determined that robbery in Florida, which is defined as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with the intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course

of the taking there is the use of force, violence, assault or putting in fear," was a crime of violence because the elements "hew almost exactly to the generic definition of robbery." *Lockley*, 632 F.3d at 1242–43.

The courts that have determined a state's robbery statute is overbroad and therefore not a crime of violence under the enumerated offenses clause have done so either because the statute included an additional element not covered in the generic definition or because there was a reasonable probability that a conviction would result in a conduct that falls outside the generic definition of robbery. For example, in *United States v. Montiel–Cortes*, 849 F.3d 221 (5th Cir. 2017), the Fifth Circuit concluded that the Nevada robbery statute was broader than the generic, contemporary definition of robbery because it covered not just immediate danger but also future danger. *Id.* at 228.[7] Additionally, the District of Oregon determined that Oregon's robbery statute is overbroad because it includes conduct that does not necessarily involve immediate danger to a person, such as a situation in which a purse-snatching victim did not even realize she was robbed until she saw the robber running away. *United States v. Wicklund*, No. 3:15-cr-00015-HZ, 2016 WL 6806341, at *4 (D. Or. Nov. 17, 2016).

Applying the principles taken from these cases, the Court concludes that the New York robbery statute substantially corresponds to the generic form of robbery. New York Penal Law § 160.00 tracks the generic definition, with only minor

---

[7]    Nevertheless, the Fifth Circuit concluded that robbery in Nevada is a crime of violence because the statute substantially corresponds to the generic definition of extortion, another enumerated offense. *Montiel–Cortes*, 849 F.3d at 229.

variations. Like generic robbery, New York's legal definition first requires the taking of property from another person or from the immediate presence of another person. *See* N.Y. PENAL LAW § 160.00 ("[I]n the course of committing a larceny"); N.Y. PENAL LAW § 155.05 ("A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof"). Second, the taking must be done by force or intimidation. *See* N.Y. PENAL LAW § 160.00 ("[H]e uses or threatens the immediate use of physical force upon another person"). Indeed, the Second Circuit has stated in dicta that "[t]he generic meaning of 'robbery' is reflected in the statutory definitions of [New York's attempted robbery in the third degree]."[8] *United States v. Brown*, 52 F.3d 415, 425–26 (2d Cir. 1995) (comparing the definition of "forcible stealing" in N.Y. Penal Law § 160.00 to the federal definition of robbery in 18 U.S.C. § 1951(b)(1)); *see also United States v. Austin*, No. 08 Civ. 6765(JSR)(KNF), 2009 WL 35027, at *2 (S.D.N.Y. Jan. 5, 2009) (same).

Additionally, New York Penal Law § 160.00 does not contain any elements broader than those in the generic definition of robbery, like the Nevada statute, and none of the New York robbery cases discussed earlier suggest that an individual could be convicted of robbery when there is no force or intimidation, as is the case in Oregon.

---

[8] Ultimately, the Second Circuit determined that robbery in New York was a violent felony based on the force clause. *Brown*, 52 F.3d at 426. However, as already discussed, this case was decided pre-*Johnson I* and does not control here.

Because the New York statute substantially corresponds to, and is no broader than, the generic form of robbery, Mr. Childers' prior New York robbery conviction is a "crime of violence" pursuant to U.S.S.G. § 4B1.2(a)(2), the enumerated offenses clause.

## VI.    CONCLUSION

The Court concludes that Mr. Childers' prior New York robbery conviction is a predicate offense under the career offender guidelines.    Additionally, the Court ORDERS Mr. Childers to notify the Court within one week of the date of this Order whether he concedes that his prior Massachusetts drug-trafficking conviction is a predicate offense or whether he wishes to make the argument that the Massachusetts drug-trafficking conviction is not a "controlled substance offense" under the Guidelines.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of June, 2017